**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MINERVA PORTILLO,** | |
| *Plaintiff* | |
| **v.** | |
| **TERRY RICHARDSON, TRUMP MODEL MANAGEMENT LLC, T-MANAGEMENT LLC, TMG MEMBER, LLC, DJT HOLDINGS LLC, and ANNIE VELTRI** | **CASE NO. 1:23-cv-10237** |
| *Defendants.* | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Minerva Portillo, by and through her attorneys at Sanford Heisler Sharp, LLP and Iuris&Factor, files her complaint against Defendants Terry Richardson, Trump Model Management LLC, T-Management LLC, TMG Member, LLC, DJT Holdings LLC, and Annie Veltri, and alleges as follows:

### I.        INTRODUCTION

1.        Approximately 20 years ago, Spanish model Minerva Portillo was at the height of her modeling career. At just 22 years old, she was considered one of the top models in the world: she had starred in numerous fashion campaigns, was featured on the covers of prestigious fashion magazines, and was rapidly gaining international recognition.

2.        In 2004, Ms. Portillo was booked by Trump Model Management LLC for a photoshoot with world-famous fashion photographer Terry Richardson at his studio in New York, NY.

1

3.     When she arrived on set, Ms. Portillo was given a beverage that, upon information and belief, contained an intoxicating or narcotic substance.

4.     After taking a few photos of her, Mr. Richardson joined Ms. Portillo on set and sexually assaulted her in front of his employees. He groped Ms. Portillo's breasts. He posed next to her with his erect penis. He forced Ms. Portillo to perform oral sex on him. And he concluded by ejaculating on Ms. Portillo's face.

5.     Mr. Richardson and his employees photographed the assault while it was happening.

6.     After the assault, one of Mr. Richardson's employees directed Ms. Portillo to sign a release for the photographs. The release falsely stated that the photographs taken "do not depict actual sexually explicit conduct." Ms. Portillo, whose native language is not English, did not know what she was signing.

7.     Ms. Portillo was scheduled to see Mr. Richardson for a second photoshoot the following day. She tried to cancel the appointment, but Trump Model Management LLC insisted that she attend. Following that photoshoot, Mr. Richardson again forced Ms. Portillo to perform oral sex on him, again in front of others, again having his employees take photographs of the assault.

8.     Approximately three months later, Mr. Richardson displayed sexually explicit photographs of Ms. Portillo being sexually assaulted at a New York art exhibition titled "Terry Richardson: Terryworld."

9.     In 2006, Mr. Richardson published sexually explicit photographs of Ms. Portillo being sexually assaulted in a book titled *Kibosh*.

10.     Some of the photographs of Ms. Portillo being assaulted were posted online. At least one photograph was auctioned on the renowned art market website Artnet.

11.     Ms. Portillo did not consent to the release or publication of any of these images. The sexual assault and the unauthorized dissemination of photographs of the assault caused Ms. Portillo significant pain and suffering, lasting psychological harms, loss of dignity, and invasion of privacy.

12.     Because of these photographs, Ms. Portillo's successful modeling career came to an abrupt end. Due to the sexually explicit images that now existed of Ms. Portillo and had been widely circulated, Ms. Portillo's Spanish modeling agency terminated its contract with her, and she generally stopped receiving modeling work. Her career was upended, and her professional reputation was severely damaged.

13.     Ms. Portillo was traumatized by the experience and suffered in silence for many years.

14.     In 2017, when the #MeToo movement spurred a reckoning within the fashion industry and revealed that Mr. Richardson had been accused of sexual misconduct by many other women, Ms. Portillo found the courage to tell her story publicly.

15.     She brings this lawsuit now, in part, under the New York Adult Survivors Act, which enables survivors of sexual assault to hold their abusers accountable even if the underlying abuse occurred long ago.

## II.     PARTIES

16.     PLAINTIFF MINERVA PORTILLO is a natural person and currently a resident of the country of Spain. In or around May 2004, when she was assaulted by Terry Richardson, she was briefly a resident of New York County, New York.

17.    DEFENDANT TERRY RICHARDSON is a natural person and currently a resident of New York.

18.    DEFENDANT TRUMP MODEL MANAGEMENT LLC ("Trump Model Management") is a New York limited liability corporation with its principal place of business in New York County, New York, registered to transact and which did transact business in New York County, New York. Trump Model Management filed for dissolution in December 2022, just weeks after the New York Adult Survivors Act went into effect.

19.    DEFENDANT T-MANAGEMENT LLC is a New York limited liability corporation with its principal place of business in New York County, New York, registered to transact and which does transact business in New York County, New York.

20.    DEFENDANT TMG MEMBER, LLC is a New York limited liability corporation with its principal place of business in New York County, New York, registered to transact and which did transact business in New York County, New York. T-Management LLC filed for dissolution in December 2022, just weeks after the New York Adult Survivors Act went into effect.

21.    DEFENDANT DJT HOLDINGS LLC is a Delaware limited liability corporation with its principal place of business in New York County, New York, registered to transact and which does transact business in New York County, New York.

22.    DEFENDANT ANNIE VELTRI is a natural person and currently a resident of New York.

23.    Upon information and belief, Defendant Trump Model Management LLC and Defendant T-Management LLC operated together as a modeling agency, of which Defendant Annie Veltri is a 15% owner and Defendant TMG Member, LLC is an 85% owner, the latter

of which Defendant DJT Holdings is a 100% owner (together, "Trump Model Management Defendants").[1]

### III.    JURISDICTION AND VENUE

24.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

25.    This Court has personal jurisdiction over Defendant Terry Richardson pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because Defendant is domiciled in and conducts business within this Judicial District.

26.    This Court has personal jurisdiction over Trump Model Management Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because Trump Model Management Defendants are domiciled in and/or conduct business within this Judicial District.

27.    This Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district.

### IV.    TIMELINESS

28.    This action is timely because it falls under the Adult Survivors Act and is brought during the one-year time period set forth in that section. N.Y. C.P.L.R. § 214-j. The claims brought here allege intentional and negligent acts and omissions for physical, psychological, and other injuries suffered as a result of conduct that would constitute a sexual offense as defined by § 130 of the New York Penal Law committed against a person who is eighteen

---

[1] Executive Branch Personnel Public Financial Disclosure Report (OGE Form 278e), https://extapps2.oge.gov/201/Presiden.nsf/PAS+Index/6E78B163F816EF6A852586630075291D/$FILE/Trump,%20Donald%20J.%202021Termination%20278.pdf.

years of age or older. Such claims have been revived by N.Y. C.P.L.R. § 214-j and may be commenced within a one-year period beginning November 24, 2022.

29.     This action is further timely because New York City Administrative Code § 10-1105(a) permits survivors of gender motivated crimes of violence to bring otherwise time-barred civil claims under the Victims of Gender-Motivated Violence Protection Law, New York City Administrative Code§ 10-1101 et seq, within a two-year period beginning March 1, 2023.

### V.     FACTUAL ALLEGATIONS

#### A.   Terry Richardson Is a World-Renowned, Influential Photographer

30.     Mr. Richardson is one of the most famous photographers in the world. He is especially well-known for his fashion campaign work, as well as his portraiture of celebrities and politicians. Throughout his career, he has worked with luxury fashion brands such as Marc Jacobs, Tom Ford, Yves Saint Laurent, and Gucci. His work has regularly appeared in high-profile magazines such as *Vogue*, *Rolling Stone*, *Vanity Fair*, *Harper's Bazaar*, and *GQ*. He has directed music videos for famous musicians like Beyoncé and Miley Cyrus, and photographed famous individuals such as Barack Obama, Oprah, Lady Gaga, Kim Kardashian, Rihanna, Cindy Crawford, and Lebron James.

31.     In 2004, when he photographed Ms. Portillo, Mr. Richardson was one of the most sought-after fashion photographers in the world. A portrait or fashion campaign shot by him could launch a model's career. He wielded enormous power and influence in the world of fashion photography.

32.     Mr. Richardson's photography style is distinct. He is known for including himself in the images he takes, often appearing with his subjects in front of the camera.

33.     He is also known for taking sexually explicit images. Many of his photographs are provocative: they depict his subjects naked and engaging in sex acts. Many of his photographs show him engaging in sex acts with young women he was photographing.

34.     As has been revealed in recent years, many of these photographs cross the line between provocative art and sexual assault.

**B.   Terry Richardson Has Built His Career on Photographing Sexual Assault**

35.     Mr. Richardson has been the subject of pervasive allegations of sexual misconduct. Many of the allegations made against him by the models in his photographs are remarkably similar to what Ms. Portillo endured in 2004.

36.     In 2001, Mr. Richardson photographed model Liskula Cohen in a photoshoot for *Vogue*, which she allegedly left when his requests became too sexually explicit. In 2014, she alleged in *New Statesman,* "[H]e wanted me to be completely naked and pretend to give one of the men [present at the shoot] a sex act, while he was also naked."[2]

37.     In 2005, model Gabriela Johansson sued Mr. Richardson for fraud, misappropriation, invasion of privacy, breach of contract, and intentional infliction of emotional distress. In the complaint, Gabriela Johansson alleged "she was pressured to pose naked and when she refused, saying she was uncomfortable, she was terminated."[3] The complaint also alleged that Richardson "ultimately pushed aggressively for her to pull down

---

[2] Harriet Williamson, *How many models will speak out against Terry Richardson before the fashion industry cares?*, New Statesman (last updated Sept. 26, 2023), https://www.newstatesman.com/world/2014/02/how-many-models-will-speak-out-against-terry-richardson-fashion-industry-cares.

[3] Harriet Sim, *The Disturbing List of Sexual Assault and Harassment Allegations Against Terry Richardson,* Marie Claire (October 25, 2017), https://www.marieclaire.com.au/terry-richardson-every-sexual-harassment-and-assault-allegation.

her bottoms and/or remove all of her clothes" during a "casting session" and then terminated that session when she refused to oblige with his requests.[4] The case was settled.

38.    Also in 2005, model Frank Lopera filed a lawsuit against Mr. Richardson, alleging that he allowed Mr. Richardson to take nude photographs of him only after Mr. Richardson assured him that the photographs would never be published. Mr. Lopera further alleged that, shortly thereafter, Mr. Richardson published these images in his book, *Terryworld*.[5]

39.    In 2008, Anna del Gaizo, a New York writer and stylist, alleged she "was photographed and sexually assaulted by the delighted Terry Richardson." She alleged in an email to *Jezebel*, "He had me kind of crouch down on the floor as I moved around, posing. Then, suddenly, I felt a dick pressing into the side of my face. Terry Richardson's semi-hard penis was plunged into the outside of my cheek, and he was jabbing it into my face."[6]

40.    In 2009, 19-year-old model Sena Check was allegedly asked by Mr. Richardson's assistant to perform a violent sex act on Mr. Richardson during a naked photoshoot.[7]

41.    In 2010, model Rie Rasmussen alleged that Mr. Richardson photographed underage girls performing sex acts for his book, *Terryworld*."[8]

42.    In 2010, model Jamie Peck alleged that she wanted to keep her underwear on during a photoshoot because she was menstruating, but Mr. Richardson asked her to take out her used

---

[4] Alex Abad-Santos, *The Terry Richardson sexual assault scandal: explained*, Vox (June 19, 2014), https://www.vox.com/2014/6/19/5817806/terry-richardson-explainer.

[5] Alani Nelson & Mira Olivia Milla, *A Brief History of Terry Richardson Being the Absolute Worst*, Complex (August 14, 2014), https://www.complex.com/style/a/nelsonalanie/a-brief-history-of-terry-richardsons-worst-moments.

[6] Erin Gloria Ryan, *'I Felt a Dick Pressing Into My Face': Terry Richardson Strikes Again*, Jezebel (June 11, 2014), https://jezebel.com/i-felt-a-dick-pressing-into-my-face-terry-richardson-s-1589474038.

[7] *Picture Me* (2009).

[8] Page Six.com Staff, *Model snaps at fashion fotog,* Page Six (March 12, 2010), https://pagesix.com/2010/03/12/model-snaps-at-fashion-fotog/.

tampon so he could play with it. She alleged that Mr. Richardson undressed in front of her and asked her to take pictures of him.[9]

43.     In 2011, model Felice Fawn published her conversation with Mr. Richardson about potentially modeling for him. In that conversation, Ms. Fawn allegedly indicated that she would not perform sex acts for him, and Mr. Richardson allegedly responded, "thanks for the chat and wish you all the best, since there is one real way for fame."[10]

44.     In 2014, model Charlotte Waters alleged that during a photoshoot when she was 19 years old, Mr. Richardson aggressively kissed her, instructed her to perform oral sex on him, and masturbated on her face, which was documented in photographs.[11]

45.     In 2014, Mr. Richardson directed a music video for Lady Gaga and R. Kelly, which was allegedly never released because of its explicit depiction of sexual assault.[12]

46.     In 2017, designer and model Lindsay Jones alleged in *HuffPost* that when she first met Mr. Richardson, she left his studio crying as he cornered her, pulled out his penis, and assaulted her.[13]

---

[9] Jenna Suers, *Meet Terry Richardson, The World's Most F—ked Up Fashion Photographer*, Jezebel (March 16, 2010), https://jezebel.com/meet-terry-richardson-the-worlds-most-f-ked-up-fashion-5494634.

[10] Jenna Saurs, *Terry Richardson: "I am A Pervert Like the Rest in Fashion"* (March 31, 2011), Jezebel, https://jezebel.com/terry-richardson-i-am-a-pervert-like-the-rest-in-fash-5787691.

[11] Harriet Sim, *The Disturbing List of Sexual Assault and Harassment Allegations Against Terry Richardson,* Marie Claire (October 25, 2017),  https://www.marieclaire.com.au/terry-richardson-every-sexual-harassment-and-assault-allegation.

[12] Sean Michaels, *Lady Gaga video allegedly scrapped due to sexual misconduct claims*, The Guardian (June 20, 2014), https://www.theguardian.com/music/2014/jun/20/lady-gaga-video-allegedly-scrapped-due-to-sexual-misconduct-allegations; Spencer Kornhaber, *Lady Gaga's R. Kelly Apology Is a Reminder That Abuse Isn't Provocative*, The Atlantic (January 11, 2019),  https://www.theatlantic.com/entertainment/archive/2019/01/lady-gaga-r-kelly-do-what-u-want-apology/580048/.

[13] Emma Gray, *New Allegation: Photographer Terry Richardson Sexually Assaulted Designer In His Studio Doorway*, Huff Post (December 13, 2017), https://www.huffpost.com/entry/designer-shares-new-abuse-allegations-against-photographer-terry-richardson_n_5a3041e0e4b07ff75afe6227.

47.     In 2017, model Caron Bernstein alleged in *New York Daily News* that Mr. Richardson exposed his penis and forced it in her mouth during a photo shoot.[14]

48.     In 2017, model Ashley Graham alleged that Mr. Richardson exposed himself to her during a campaign shoot. She alleged to *Stylist*, "He lured me into this hallway, pushed me into a closet. He exposed himself and he said, 'look at what you did to me all day long, now touch it.'" Ms. Graham further alleged that the incident caused her to fear for her career: "I thought to myself, 'I'm never going to be hired for a job again. I'm going to be the difficult model and nobody's going to want to work with me if they know that something like that happened."[15]

49.     In 2017, in light of the #MeToo movement and public allegations against Mr. Richardson, Conde Nast, publisher of *Vogue*, *Vanity Fair*, and *GQ*, announced it was terminating its business relationship with him. Fashion houses Valentino and Bulgari followed by announcing they would no longer commission Mr. Richardson. Diesel, another fashion brand, also cut ties in 2017 with the photographer.

50.     Mr. Richardson's own public statements do nothing to defeat these allegations. In 2004, he explained to *New York Observer* his technique for getting women to model in the nude. He stated, "A lot of it starts with me saying to a girl, 'Do you want to do nudes?' And they're like, 'I don't want to be naked.' So I say, 'I'll be naked and you take the pictures. You

---

[14] Brian Niemietz, *Model recounts alleged sex assault nightmare with Terry Richardson*, New York Daily News (Last Updated April 7, 2018), https://www.nydailynews.com/2017/12/14/model-recounts-alleged-photoshoot-sex-assault-nightmare-with-terry-richardson/.

[15] Kayleigh Dray, *Ashley Graham shares her own terrifying sexual harassment ordeal*, Stylist (2017), https://www.stylist.co.uk/people/ashley-graham-shares-metoo-story-sexual-abuse-assault-terry-richardson-model-rape/182974.

can have the camera. You can have the phallus.'"[16] In 2007, Mr. Richardson boasted in an interview with *Hint* magazine, "it's not who you know, it's who you blow. I don't have a hole in my jeans for nothing."[17] And in 2013, Mr. Richardson told the *New York Post,* "I was a shy kid and now I'm this powerful guy with a boner, dominating all these girls."

      **C.   Terry Richardson Sexually Assaults Minerva Portillo**

51.   Ms. Portillo began modeling when she was 14 years old. By the time that she had graduated from high school, she had been featured in various magazines and fashion campaigns.

52.   In the late 1990s and early 2000s, her career in Spain and broader Europe thrived. She began receiving international attention for her work.

53.   In or around 2003, Trump Model Management, an American modeling agency located in New York, reached out to Ms. Portillo through her Spanish modeling agency and expressed interest in working with her.

54.   Ms. Portillo was excited about the possibility of expanding her career to the United States. She knew that signing with Trump Model Management and working in the United States would create invaluable career opportunities.

55.   Ms. Portillo's Spanish modeling agency, View Women Models, established a partnership with Trump Model Management, whereby Trump Model Management would represent Ms. Portillo in the United States.

---

[16] Lydia Smith, *Terry Richardson Timeline: From Fashion's Favourite Photographer to Witch-Hunted 'Pervert'*, International Business Times (March 18, 2014), https://www.ibtimes.co.uk/terry-richardson-timeline-fashions-favourite-photographer-witch-hunted-pervert-1440813.

[17] Harriet Sim, *The Disturbing List of Sexual Assault and Harassment Allegations Against Terry Richardson*, Marie Claire (October 25, 2017), https://www.marieclaire.com.au/terry-richardson-every-sexual-harassment-and-assault-allegation.

56.     In or around February 2004, Trump Model Management sponsored Ms. Portillo's H-1B visa, enabling her to start working in the United States. Ms. Portillo intended to move to New York and work in the United States.

57.     On or around April 12, 2004, at the age of 22, Ms. Portillo arrived in New York. At the time, she spoke minimal English. She moved by herself, without family or friends. Her only acquaintances in New York were her contacts at Trump Model Management.

58.     A few days following her arrival in New York, Trump Model Management sent Ms. Portillo on what is known in the fashion industry as a "go see" with Mr. Richardson. A "go see" is an opportunity for a model to introduce herself to a photographer and show her portfolio.

59.     Ms. Portillo had heard of Mr. Richardson and admired his fashion photography. She knew that his influence in the field could launch her career in the United States.

60.     On or around April 14, 2004, Ms. Portillo met Mr. Richardson at his studio, located at 212 Bowery, New York, NY 10012. During their meeting, Mr. Richardson wore nothing but a robe. Ms. Portillo was disturbed by this. She tried to keep the meeting professional and kept her distance from Mr. Richardson while they looked through her portfolio together.

61.     During the meeting, Mr. Richardson expressed interest in working with Ms. Portillo on multiple campaigns and projects.

62.     After the meeting, Ms. Portillo told her agents at Trump Model Management that Mr. Richardson had worn only a robe during their meeting, and that this made her uncomfortable. Trump Model Management dismissed her concerns, telling her that such behavior was commonplace and that given Mr. Richardson's prominence and influence in the industry, Ms. Portillo should overlook his behavior.

63.     Trump Model Management booked Ms. Portillo for a photoshoot with Mr. Richardson for a few weeks later.

64.     The photoshoot took place on or about May 11, 2004. When she arrived at the studio at 212 Bowery, Ms. Portillo was greeted by a woman who, upon information and belief, was an employee of Mr. Richardson's. The employee offered Ms. Portillo a beverage and cocaine. Ms. Portillo accepted the beverage and declined the drugs.

65.     Ms. Portillo believes that the beverage contained an intoxicating or narcotic substance she had not consented to taking. Shortly after consuming the beverage, she began to feel dizzy, disoriented, and not fully in control of her body.

66.     Mr. Richardson's assistant took photographs of Ms. Portillo until Mr. Richardson and his crew of approximately nine employees arrived on set.

67.     Mr. Richardson and several of his employees also began taking pictures of Ms. Portillo.

68.     Mr. Richardson directed Ms. Portillo to remove her top.

69.     After taking a few photographs of her, Mr. Richardson then joined Ms. Portillo on set. He began posing with Ms. Portillo while his employees took pictures of them. Ms. Portillo found this behavior unusual, but afraid of angering Mr. Richardson, chose not to voice her concerns.

70.     Mr. Richardson began touching Ms. Portillo's body without her consent, including her naked breasts.

71.     Mr. Richardson then stood behind Ms. Portillo, pulled down his pants, and took out his penis. Ms. Portillo felt Mr. Richardson press his penis against her lower back and buttocks,

behavior to which she had not consented. Ms. Portillo was extremely uncomfortable and tried to move away from Mr. Richardson.

72.     Mr. Richardson pulled Ms. Portillo down on her knees. He pressed his penis in her face and on her mouth. He forcibly inserted his penis into her mouth, and ordered her to perform oral sex on him.

73.     Ms. Portillo was shocked and disgusted by this behavior, to which she had not consented. She refused by repeatedly saying "no." She tried to push Mr. Richardson away and attempted to back away from him. But she was closely surrounded by Mr. Richardson's employees, some of whom were cheering. Mr. Richardson had his hand on her head, keeping her in place.

74.     Given the force Mr. Richardson was using, his power and influence in the industry, the number of employees surrounding her, and the disorienting effects of the unknown substance she had consumed, Ms. Portillo felt she had no choice but to comply with Mr. Richardson's directive to perform oral sex on him.

75.     Mr. Richardson and his employees photographed the assault.

76.     Mr. Richardson's assistant and girlfriend, who has since become his wife, joined the photoshoot and also took photographs of the assault.

77.     Throughout the photo session, Mr. Richardson and his employees repeatedly cheered.

78.     Mr. Richardson ended the photoshoot by ejaculating on Ms. Portillo's face, to which she had not consented.

79.     One of Mr. Richardson's employees threw Ms. Portillo a tissue to wipe her face. She also handed Ms. Portillo a document and instructed her to sign it. Ms. Portillo, who spoke

limited English at the time, was still feeling the intoxicating effects of the substance she had consumed, and was shocked by the assault she had endured, complied without reading the document and without knowing what she was signing.

80.     The document Ms. Portillo signed was an undated release form. Unbeknownst to Ms. Portillo, the release falsely stated that the photographs being released "do not depict actual sexually explicit conduct."

81.     In Ms. Portillo's experience, and as is customary in the modeling industry, her agents would handle releases for her. A request to sign documents outside the presence of an agent was highly unusual.

82.     Neither Mr. Richardson nor his employees verified Ms. Portillo's identity and age.

83.     Ms. Portillo was scheduled for a second photoshoot with Mr. Richardson the following day. Deeply upset about the assault, Ms. Portillo wanted to cancel the appointment. She attempted to tell an agent at Trump Model Management about the assault. But as she voiced her reluctance about working with Mr. Richardson again and expressed her concern, Trump Model Management insisted that she proceed with the appointment.

84.     Fearful that she would lose her job with Trump Model Management, professional opportunities, or even the agency's support of her visa if she rejected the job, Ms. Portillo attended the second photoshoot with Mr. Richardson.

85.     On or about May 12, 2004, Ms. Portillo attended a second photoshoot with Mr. Richardson, held at an outdoor location for Gurú, a fashion brand.

86.     Following the photoshoot, Ms. Portillo entered a van with Mr. Richardson and several of his employees to be driven back to his studio in Manhattan. While the van was in motion, Mr. Richardson moved to sit by Ms. Portillo. He unbuckled his pants, grabbed her

head, and forced it towards his penis without her consent. He then pressed his penis against her face and commanded her to perform oral sex on him.

87.     Ms. Portillo said "no" and tried to back away. But she felt forced to comply. She was in a moving vehicle, surrounded by Mr. Richardson's employees, and Mr. Richardson was forcibly holding her head down.

88.     Mr. Richardson's employees again photographed the assault.

89.     The following day, one of Mr. Richardson's employees contacted Ms. Portillo and urged her to return to Mr. Richardson's studio. She told Ms. Portillo that Mr. Richardson considered her his "muse."

90.     Ms. Portillo felt traumatized by the two assaults she had endured. She refused and left New York just a week later. She moved back to Spain, abandoning her nascent modeling career in the United States because of her experience with Mr. Richardson.

**D. Mr. Richardson Distributes the Photographs Depicting Ms. Portillo's Assault for Profit and without her Consent**

91.     Shortly thereafter, Trump Model Management informed Ms. Portillo that Mr. Richardson had an exhibition in New York which featured some of the photographs he and his employees had taken of Ms. Portillo.

92.     Upon information and belief, the exhibition, which was titled "Terry Richardson: Terryworld" was held by Jeffrey Deitch at Deitch Projects from September 10 to October 2, 2004. It featured sexually explicit photographs of Ms. Portillo being sexually assaulted by Mr. Richardson. Mr. Richardson did not obtain Ms. Portillo's consent to distribute or sell these photographs. Furthermore, the purported "release" that Ms. Portillo signed did not cover sexually explicit conduct like that depicted in the photographs.

93.     Upon information and belief, the Terryworld exhibition, including the sexually explicit photographs of Ms. Portillo being sexually assaulted, was later displayed in locations around the world. Mr. Richardson did not obtain Ms. Portillo's consent to distribute or sell these photographs.

94.     Upon information and belief, Mr. Richardson profited from the Terryworld exhibition.

95.     In or around June 2005, Ms. Portillo sent a letter to Mr. Richardson via her lawyer, informing Mr. Richardson that she had not consented to his distribution of the photographs, nor the content depicted in them, and instructed him to cease and desist publishing and distributing these photographs.

96.     Mr. Richardson did not respond and continued distributing the photographs.

97.     In or around 2006, Mr. Richardson published a photography book titled *Kibosh*, published by Damiani Editore. The book included several sexually explicit photographs taken of Ms. Portillo being sexually assaulted. Mr. Richardson did not obtain Ms. Portillo's consent to distribute or sell these photographs. To this day, Damiani Editore continues to publish and distribute *Kibosh*.

98.     Damiani Editore describes "the meaning of [Terry Richardson's] work" as depicted in *Kibosh* "to give a picture to fun. In fact all the protagonists of his pictures are having fun and enjoy life."[18]

99.     Upon information and belief, Mr. Richardson profited from and continues to profit from the publishing and distribution of *Kibosh*.

---

[18] *Terry Richardson: Kibosh*, Damiani (Updated 2016),
https://www.damianibooks.com/en/products/8943109?_pos=1&_sid=a391a45ea&_ss=r#shopify-section-template--17120078790934__fd3f4f67-b05d-4d80-a860-992813ea2e81.

100.    Upon information and belief, Mr. Richardson also auctioned at least one of the sexually explicit photographs taken of Ms. Portillo being sexually assaulted on Artnet.com. Mr. Richardson did not obtain Ms. Portillo's consent to distribute or sell this photograph.

101.    Upon information and belief, Mr. Richardson profited from selling this photograph on Artnet.

102.    Many of the images Mr. Richardson and his employees took of Ms. Portillo while she was being sexually assaulted are freely accessible on the Internet to this day.

### E.   Mr. Richardson's Behavior Caused Ms. Portillo Profound Psychological and Reputational Harm

103.    Being forced to perform oral sex on Mr. Richardson was one of the most difficult moments of Ms. Portillo's life. Having the photographs of the assault distributed and sold for the public to see caused Ms. Portillo deep shame and psychological harm.

104.    Publication of the photographs forever altered Ms. Portillo's modeling career. Trump Model Management stopped booking her for photography shoots. Her Spanish modeling agency terminated its contract with her in 2005 because it did not want to be associated with the sexually explicit images that existed of Ms. Portillo. Her other agencies distanced themselves from Ms. Portillo. She stopped receiving modeling opportunities, and her career came to a standstill, causing her substantial financial harm.

105.    Ms. Portillo also suffered significant emotional distress. She developed anxiety, depression, and suicidal ideation. Due to feelings of deep shame, she was unable to discuss the assaults for many years. To protect herself from unwanted attention, she changed her appearance and was forced to change career paths.

106.    In 2017, when the #MeToo movement encouraged survivors of sexual assault to share their experiences and hold their abusers accountable, Ms. Portillo was able to share her

story publicly for the first time. In November 2017, she recounted her experiences with Mr. Richardson – and the impact they had on her life – to Vogue Spain.[19]

## VI.    COUNTS

### Count One: Battery

### (against Terry Richardson)

107.    Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

108.    Mr. Richardson committed battery against Ms. Portillo when he touched her breasts, touched her buttocks with his penis, touched her face and mouth with his penis, and repeatedly forced her to perform oral sex on him.

109.    Mr. Richardson intentionally, and without her consent, assaulted Ms. Portillo to satisfy his own sexual desires.

110.    Mr. Richardson's physical contact with Ms. Portillo was offensive and wrongful under all circumstances.

111.    Mr. Richardson continued the nonconsensual sexual conduct despite her attempts to stop him.

112.    Mr. Richardson used physical force to receive oral sex from Ms. Portillo.

113.    Mr. Richardson's employee, who acted as his agent, gave Ms. Portillo a beverage that caused her to feel mentally incapacitated.

---

[19] Patricia Moreno, *The story of Minerva Portillo before, during and after Terry Richardson, told by herself*, Vogue-Spain (November 21, 2017), https://www.vogue.es/moda/news/articulos/minerva-portillo-terry-richardson-modelo-historia-acoso-sexual-verdad/31964.

114.    Mr. Richardson's conduct was the direct and proximate cause of Ms. Portillo's past and future substantial damages, including significant pain and suffering, lasting psychological and pecuniary harms, loss of dignity, and invasion of privacy.

115.    Mr. Richardson's actions constitute sexual offenses as defined in Article 130 of the New York Penal Law, including but not limited to sexual misconduct (§ 130.20), criminal sexual act in the third degree (§ 130.40), criminal sexual act in the second degree (§ 130.45), criminal sexual act in the first degree (§ 130.50), forcible touching (§ 130.52), sexual abuse in the third degree (§ 130.55), sexual abuse in the second degree (§ 130.60), and sexual abuse in the first degree (§ 130.65).

116.    Ms. Portillo's claim for Battery is thus timely under the Adult Survivors Act, N.Y. C.P.L.R. § 214-j.

## Count Two: Intentional Infliction of Emotional Distress

### (against Terry Richardson)

117.    Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

118.    Mr. Richardson engaged in extreme and outrageous conduct when he repeatedly sexually assaulted Ms. Portillo, took photographs of the assaults, and then distributed these sexually explicit and deeply invasive photographs widely for profit without Ms. Portillo's consent. He did not cease distribution even after Ms. Portillo informed him that the photographs were taken non-consensually.

119.    Mr. Richardson intended to cause, or disregarded the substantial probability of causing, Ms. Portillo severe emotional distress by repeatedly assaulting her and distributing photographs of the assaults.

120.     Mr. Richardson's conduct was the direct and proximate cause of Ms. Portillo's past and future substantial damages, including significant pain and suffering, lasting psychological and pecuniary harms, loss of dignity, and invasion of privacy.

121.     Because of the continuous nature of Mr. Richardson's unlawful conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

122.     Ms. Portillo brings this claim as a civil claim, alleging intentional or negligent acts or omissions for injuries suffered as a result of Mr. Richardson's actions that constitute sexual offenses as defined in Article 130 of the New York Penal Law, and Ms. Portillo's claim for Intentional Infliction of Emotional Distress is thus timely under the Adult Survivors Act, N.Y. C.P.L.R. § 214-j.

## Count Three: Negligence

### (against Trump Model Management Defendants)

123.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

124.     Ms. Portillo worked for Trump Model Management, which was responsible for booking her for and negotiating the terms of photoshoots, fashion campaigns, and other modeling opportunities.

125.     As a modeling agency, Trump Model Management owed a duty to Ms. Portillo, a model working for the agency.

126.     Trump Model Management breached its duty to Ms. Portillo. Trump Model Management knew or should have known that Mr. Richardson would harm Ms. Portillo. She twice expressed discomfort to Trump Model Management about working with Mr. Richardson

21

and tried to cancel her second photoshoot appointment with him, but Trump Model Management insisted she attend.

127.    The harms Ms. Portillo experienced were foreseeable.

128.    Trump Model Management's conduct was the direct and proximate cause of Ms. Portillo's past and future substantial damages, including significant pain and suffering, lasting psychological and pecuniary harms, loss of dignity, and invasion of privacy.

129.    The events giving rise to this claim occurred before Trump Model Management and TMG Member, LLC were dissolved. N.Y. Bus. Corp. Law § 1006(b).

130.    Ms. Portillo brings this claim as a civil claim, alleging intentional or negligent acts or omissions for injuries suffered as a result of Mr. Richardson's actions that constitute sexual offenses as defined in Article 130 of the New York Penal Law, and Ms. Portillo's claim for Negligence is thus timely under the Adult Survivors Act, N.Y. C.P.L.R. § 214-j.

## Count Four: Negligent Infliction of Emotional Distress

### (against Trump Model Management Defendants)

131.    Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

132.    Trump Model Management owed a special duty to Ms. Portillo. Trump Model Management was responsible for booking and negotiating the terms of photoshoots, fashion campaigns, and other modeling opportunities for Ms. Portillo. Ms. Portillo twice reported her discomfort working with Mr. Richardson and expressed her desire to cancel the second photoshoot with him.

133.    Trump Model Management breached that duty, and engaged in extreme and outrageous conduct, when it insisted that Ms. Portillo attend two photoshoots with Mr.

Richardson. Mr. Richardson sexually assaulted Ms. Portillo multiple times. These were traumatic events that endangered Ms. Portillo's physical safety and caused her to fear for her physical safety.

134.    Trump Model Management's conduct was the direct and proximate cause of Ms. Portillo's past and future substantial damages, including significant pain and suffering, lasting psychological and pecuniary harms, loss of dignity, and invasion of privacy.

135.    The events giving rise to this claim occurred before Trump Model Management and TMG Member, LLC were dissolved. N.Y. Bus. Corp. Law § 1006(b).

136.    Ms. Portillo brings this claim as a civil claim, alleging intentional or negligent acts or omissions for injuries suffered as a result of Mr. Richardson's actions that constitute sexual offenses as defined in Article 130 of the New York Penal Law, and Ms. Portillo's claim for Negligent Infliction of Emotional Distress is thus timely under the Adult Survivors Act, N.Y. C.P.L.R. § 214-j.

### Count Five: Gender-Motivated Violence

### N.Y.C. Admin. Code §§ 8-903, 10-1104

### (against Terry Richardson and Trump Model Management Defendants)

137.    Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

138.    New York City Administrative Code § 10-1104 provides an independent cause of action for plaintiffs who are injured by a party who enables, participates in, or conspires in the commission of a crime of violence motivated by gender.

139.    Mr. Richardson committed a crime of violence when, without her consent, he touched Ms. Portillo's breasts, touched her buttocks with his penis, touched her face and mouth

with his penis, and repeatedly forced her to perform oral sex on him. These actions constitute a misdemeanor or felony as defined in state law in Article 130 of the New York Penal Law, including but not limited to sexual misconduct (§ 130.20), criminal sexual act in the third degree (§ 130.40), criminal sexual act in the second degree (§ 130.45), criminal sexual act in the first degree (§ 130.50), forcible touching (§ 130.52), sexual abuse in the third degree (§ 130.55), sexual abuse in the second degree (§ 130.60), and sexual abuse in the first degree (§ 130.65). N.Y.C. Admin. Code §§ 8-903.

140.   Mr. Richardson committed the conduct described herein because of Ms. Portillo's gender or on the basis of her gender, and due, at least in part, to an animus based on her gender. His gender-based animus is demonstrated by his forceful sexual acts against her, his distribution photographs of these incidents, and the allegations made against him by other women.

141.   Trump Model Management enabled the commission of a crime of violence motivated by gender. Ms. Portillo twice expressed discomfort to Trump Model Management about working with Mr. Richardson and tried to cancel her second photoshoot appointment with him, but Trump Model Management insisted she attend.

142.   Mr. Richardson and Trump Model Management's conduct was the direct and proximate cause of Ms. Portillo's past and future substantial damages, including significant pain and suffering, lasting psychological and pecuniary harms, loss of dignity, and invasion of privacy.

143.   The events giving rise to this claim occurred before Trump Model Management and TMG Member, LLC were dissolved. N.Y. Bus. Corp. Law § 1006(b).

144.    Ms. Portillo's claim is timely under the Victims of Gender-Motivated Violence Protection Law. N.Y.C. Admin. Code §§ 8-903, 10-1104.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests the following relief:

a.   A permanent injunction against Mr. Richardson, and any and all persons acting in concert with him, from engaging in any further unlawful usage of the photographs of Ms. Portillo as set forth herein;

b.   An award of damages to Plaintiff, including compensatory damages and punitive damages, in an amount to be determined at trial;

c.   An award of litigation costs and expenses, including reasonable attorneys' fees;

d.   An award of pre-judgment and post-judgment interest available under law; and

e.   Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable of right to a jury.

Dated:  November 21, 2023            Respectfully submitted,

*/s/ Carolin Guentert*
Carolin Guentert
SANFORD HEISLER SHARP, LLP
17 State Street, 37th Floor
New York, New York 10004
Telephone: (646) 402-5650
cguentert@sanfordheisler.com

Christine Dunn (*pro hac vice* application
forthcoming)
SANFORD HEISLER SHARP, LLP

700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
cdunn@sanfordheisler.com

*-- and –*

Aleix Cuadrado (*pro hac vice* application
forthcoming)
IURIS&FACTOR
Av. de Pau Casals, 22
08021 Barcelona, Spain
Telephone: +34 93 3621836
aleix@iurisfactor.com

**Attorneys for Plaintiff, Minerva Portillo**